**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAUL IZOR,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**ABACUS DATA SYSTEMS INC.,** a California corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Paul Izor ("Izor" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Abacus Data Systems Inc. ("Abacus" or "Defendant") to stop Abacus from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers, including to consumers who have registered their phone numbers on the national Do Not Call registry ("DNC")), and to otherwise obtain injunctive and monetary relief for all persons injured by Abacus's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. Abacus sells software services to professionals, including attorneys and accountants.[1] Abacus's product offerings include Abacus Private Cloud, AbacusLaw, HotDocs, ResultsCRM, and OfficeTools.[2]

---

[1] https://www.abacusnext.com/about

[2] In 2017, Abacus purchased HotDocs, a document automation software company designed for the legal profession, to include the HotDocs product in their suite of Abacus products. *See* https://www.abacusnext.com/press-releases/hotdocs.

2. In order to solicit sales for HotDocs and its other software products, Abacus sends out unsolicited text messages to consumers purportedly "notifying" them that their version of HotDocs is out of date and asking them to "press y" to schedule an appointment presumably to update their accounts. However, in order to update HotDocs, the consumers receiving the text messages must pay a monthly software service fee of $75, and the appointments they schedule with Abacus are nothing more than sales pitches for HotDocs and other Abacus products such as Abacus Private Cloud, Abacus's CRM software, and OfficeTools.

3. Abacus sends these solicitation text messages without the prior express written consent of the text recipients.

4. In Plaintiff's case, Abacus sent two autodialed text messages to his cellular phone without having his prior express written consent, and despite Plaintiff having registered his phone number on the DNC.

5. In response to these text messages, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease sending unsolicited, autodialed text messages to consumers' cellular telephone numbers, and to other phone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes.

**PARTIES**

6. Plaintiff Izor is a Mount Hermon, California resident.

7. Defendant Abacus is a California corporation headquartered in San Diego, California. Defendant conducts business throughout this District, the State of California, and the United States.

**JURISDICTION AND VENUE**

8. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

9. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is incorporated in California and does significant business in this District, and because the wrongful conduct giving rise to this case was directed to and/or occurred in this District.

**COMMON ALLEGATIONS**

**Abacus Violates the TCPA By Sending Autodialed Text Messages to Consumers, Including to Consumers Who Have Registered their Phone Numbers on the DNC**

10. Abacus purchased HotDocs in November, 2017.[3]

11. The text messages that Plaintiff received state that HotDocs requires an update:



12. Updating HotDocs comes with a monthly subscription plan that the consumer is required to pay for and can cost as much as $75 per month. This is something Abacus introduced when it took over HotDocs in 2017:[4]

[3] https://en.wikipedia.org/wiki/Abacus_Data_Systems

[4] https://www.softwareadvice.com/cms/hotdocs-profile/

**If you are still running a HotDocs version ten or older, please contact us today at (801) 615-2200 or via email at upgrade@abacusnext.com. Upgrade benefits include:**

**No upfront maintenance or licensing fees**

Everything is wrapped into your monthly subscription plan. No hidden surprises anywhere. [5]

13. In addition, on the "software updates" page on HotDocs.com, Abacus solicits consumers' purchase of one of Abacus's other product, Abacus Private Cloud:



[6]

14. As of 2017, Abacus Private Cloud was made available by Abacus at a cost of approximately $150 per user, per month, with a price guarantee up to 60 months.[7]

15. Additionally, on information and belief, including investigation of counsel, consumers that schedule an appointment with Abacus regarding their "out of date" HotDocs software are solicited to purchase a monthly HotDocs subscription and other Abacus software products.

16. In sending the unsolicited text messages, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP" or to schedule an appointment by

---

[5] https://www.hotdocs.com/downloads/software-updates
[6] *id*
[7] https://www.cpapracticeadvisor.com/review/12371662/2017-review-of-abacus-private-cloud

replying "y," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a short code, which is consistent with the use of an automatic telephone dialing system to send text messages.

**Plaintiff Received Unsolicited Autodialed Text Messages to His Cell Phone Despite Registered His Phone Number on the DNC**

17. On June 29, 2003, Plaintiff Izor registered his cellular phone number on the DNC in order to avoid receiving unwanted phone and text solicitations.

18. His cellular phone number is not currently associated with a business and is for personal use.

19. On January 31, 2019 at 9:42 AM, Plaintiff received an unsolicited, autodialed text message from Defendant using shortcode 77453 on his cellular phone:

Text Message
Today 9:42 AM

HotDocs: Your HotDocs version is out of date and requires an update. Reply Y to schedule an appointment. Txt STOP to OptOut

20. On February 1, 2019 at 10:59 AM, Plaintiff received a second unsolicited, autodialed text message to his cellular phone from Defendant, again using shortcode 77453.

21. Plaintiff immediately replied "STOP" when he received the second unsolicited text message. This caused an automated response to provide confirmation that Plaintiff's cell phone number was opted out:

Today 10:59 AM

HotDocs: Your HotDocs version is out of date and requires an update. Reply Y to schedule an appointment. Txt STOP to OptOut

STOP

AbacusNext: You opted out and will no longer receive messages from AbacusNext. 8588824894

22. Plaintiff has never had a relationship with Abacus, and has never provided Abacus express written consent to contact him. In fact, at the time Plaintiff received the unsolicited autodialed text messages, he had not regularly practiced law for approximately 20 years.

23. The unauthorized text messages sent by Abacus, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Izor's use and enjoyment of his cellular phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

24. In addition, Defendant violated the DNC by sending 2 solicitation text messages within a 1-year period to Plaintiff's phone number that was registered on the Do Not Call registry.

25. Seeking redress for these injuries, Izor, on behalf of himself and two Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones, including solicitation text messages to a phone number protected by the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

26. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform Defendant used to text message Plaintiff, (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) it did not obtain prior express written consent.

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) texted more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the DNC for at least thirty days; (4) for a substantially similar reason that Defendant texted Plaintiff; and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) Defendant did not obtain prior express written consent.

27. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

28. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

29. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class;

(b) whether Defendant sent unsolicited text messages to phone numbers registered on the DNC;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

30. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

31. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes, not on facts or law applicable only to Plaintiff. Additionally, the damages

suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodial No Consent Class)**

32. Plaintiff repeats and realleges paragraphs 1 through 31 of this Complaint and incorporates them by reference.

33. Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

34. These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

35. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

36. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

37. Plaintiff repeats and realleges the paragraphs 1 through 31 of this Complaint and incorporates them by reference.

38. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

39. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[8]

40. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

41. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

42. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

[8] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

43. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call/text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Roper and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive $500 in damages for such violations of 47 C.F.R. § 64.1200.

44. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Izor, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above, and appointing Plaintiff as the representative of the Classes and his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**PAUL IZOR**, individually and on behalf of those similarly situated individuals

Dated: February 26, 2019

By: /s/ *David Ratner*

David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131

Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming*