UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL IZOR,

          Plaintiff,

v.

ABACUS DATA SYSTEMS, INC,

          Defendant.

Case No. 19-cv-01057-HSG

**ORDER DENYING MOTION TO DISMISS AND TO STAY PENDING FCC GUIDANCE**

Re: Dkt. No. 21

Pending before the Court is Defendant Abacus Data Systems, Inc. ("Abacus")'s motion to dismiss Plaintiff Paul Izor's complaint and to stay the case pending guidance from the Federal Communications Commission ("FCC"), briefing for which is complete. *See* Dkt. Nos. 1 ("Compl."), 21 ("Mot"), 23 ("Opp."), 24 ("Reply"). Having carefully considered the parties' arguments, the Court **DENIES** Defendant's motion.[1]

## I. MOTION TO DISMISS

Plaintiff brings two causes of action under the Telephone Consumer Protection Act ("TCPA"): (1) violations of 47 U.S.C. § 227(b)(1)(A)(iii) for Defendant allegedly sending unsolicited text messages using an automatic telephone dialing system ("ATDS"); and (2) violations of 47 U.S.C. § 227(c)(5) for Defendant's alleged violation of a regulation, 47 C.F.R. § 64.1200, promulgated under the statute. Compl. ¶¶ 32–44. Defendant only moves to dismiss Plaintiff's second cause of action. Mot. at 8–9.

//

//

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b)

United States District Court
Northern District of California

### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

### B. Discussion

The TCPA affords a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" relevant regulations. 47 U.S.C. § 227(c)(5). One such regulation is 47 C.F.R. § 64.1200, subsection (c)(2) of which prohibits initiating any telephone solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," and subsection (d) of which prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for

maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." Plaintiff alleges that Defendant violated both of these subsections. Compl. ¶¶ 37–44.

Defendant moves to dismiss Plaintiff's cause of action under 47 U.S.C. § 227(c)(5) for two reasons, neither of which is persuasive. First, Defendant contends that its alleged solicitations to Plaintiff's "cellular phone" did not violate the statute as a matter of law because each subsection narrowly applies to solicitations to "residential telephone subscriber[s]." Mot. at 8. But Defendant overlooks 47 C.F.R. § 64.1200(e), which extends the protections afforded by subsections (c) and (d) to solicitations "to wireless telephone numbers." *See also* Compl. ¶ 39 (invoking subsection (e)). In addition, Section 64.1200(e) by its terms incorporates solicitations to wireless numbers as described in a 2003 FCC rule. 47 C.F.R. § 64.1200(e) (incorporating solicitations "to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"). And the 2003 rule provides that the FCC "will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers,'" because "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 35–36 (F.C.C. June 26, 2003). Plaintiff goes beyond the 2003 rule's presumption, however, as he affirmatively alleges that "[h]is cellular phone number is not currently associated with a business and is for personal use." Compl. ¶ 18; *see also id.* ¶ 17 (alleging that Plaintiff "registered his cellular phone number on the [do-not-call list]"). The Court thus finds no categorical bar to Plaintiff alleging a violation of 47 U.S.C. § 227(c)(5) through conduct violating 47 C.F.R. § 64.1200(c)(2) and (d), as applied to solicitations to his wireless telephone number under 47 C.F.R. § 64.1200(e).

Defendant's second argument is that Plaintiff fails to allege any facts "explaining why Abacus purportedly does not have 'procedures for maintaining a list of persons who request not to receive telemarketing calls,'" as described in 47 C.F.R. § 64.1200(d). Mot. at 8–9. But Defendant again overlooks a dispositive issue: implementation of adequate procedures is an affirmative

defense, and thus Plaintiff bears no burden to prove its inapplicability in the complaint. *See* 47 U.S.C. § 227(c)(5) ("It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."); 47 C.F.R. § 64.1200(d) ("No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber <u>unless</u> such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.") (emphasis added).

## II.     MOTION TO STAY

Defendant moves the Court to stay the case in its entirety "until the FCC issues guidance" concerning what constitutes an ATDS, under either the primary jurisdiction doctrine or the Court's discretionary control of its docket. Mot. at 9–16. Plaintiff opposes any stay, among other reasons, because (1) controlling Ninth Circuit authority resolves the relevant question; and (2) given the existence of controlling authority, a stay will not simplify the issues in this case.

### A.     Primary Jurisdiction

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency . . . [and] is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal quotation marks and citations omitted). The doctrine is not an avenue for courts to "secure expert advice" from administrative agencies "every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). Rather, it is only appropriately invoked in cases involving "an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.*

The Court finds that the primary jurisdiction doctrine does not support a stay pending FCC

guidance concerning what constitutes an ATDS. As Defendant notes in its motion, the FCC released a Public Notice seeking comment on the issue in May 2018. Mot. at 5. But the Ninth Circuit has since definitively answered the question. *Marks v. Crunch San Diego, LLC* held that the term ATDS "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." 904 F.3d 1041, 1053 (9th Cir. 2018). *Marks* issued on September 20, 2018, months after the FCC began seeking public comments on the what constitutes an ATDS. *Marks* thus is controlling authority in the Ninth Circuit and is binding on the Court. And the Ninth Circuit's resolution of the issue without waiting for FCC guidance further demonstrates that the issue (1) is no longer a matter of first impression, and (2) is not "a particularly complicated issue" that merits waiting for FCC guidance. *See Brown*, 277 F.3d at 1172.

In hopes of sidestepping *Marks*, Defendant stresses that the FCC solicited additional comment on what constitutes an ATDS following the Ninth Circuit's decision, purportedly "confirm[ing] the state of confusion and the need for resolution of this central issue." Mot. at 7. But since then, the Ninth Circuit has confirmed that *Marks* is the law of the Ninth Circuit. *See Deguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019) (holding that the *Marks* "definition governs this appeal"). In essence, then, Defendant asks this Court to hold that the state of the law is so unclear that this case must await FCC guidance when the Ninth Circuit has repeatedly found otherwise. The Court declines that invitation and finds that primary jurisdiction does not support granting Defendant's request for a stay.

## B. Inherent Authority

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To determine whether a *Landis* stay is warranted, courts consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the

simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). "[I]f there is even a fair possibility that the stay for which [the requesting party] prays will work damage to [someone] else," then the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

Under *Landis*, the Court declines to exercise its discretion to stay the case pending FCC guidance. Although a stay will likely result in little damage to Plaintiff, the stay Defendant seeks runs a serious risk of being "essentially indefinite, since there is no clear indication that any FCC action is on the horizon." *See Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 6459964, at *4 (E.D. Cal. Dec. 10, 2018) (rejecting the exact same basis for a stay and explaining how a stay could "indefinitely delay resolution" of the case); *see also Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (concluding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). Given the possible indefiniteness of a stay, the Court finds the first *Landis* factor counsels against granting a stay. *Id.*

Given that Plaintiffs have demonstrated a "fair possibility" of harm that could result from an indefinite stay, Defendant was required under *Landis* to "make out a clear case of hardship or inequity in being required to go forward." 299 U.S. at 254–55. The Court finds Defendant has not made that clear showing. Although Defendant no doubt would prefer to delay litigation expenses, Defendant has not indicated what sort of discovery Plaintiff might seek with respect to his first cause of action that would not substantially overlap with discovery related to his second cause of action, dismissal of which this Court has already rejected. Defendant only states that "it is possible that Abacus may be forced to litigate whether the technology at issue constitutes an

ATDS under [*Marks*] only to have the FCC issue a contradictory order." Mot. at 15. But the mere possibility of intervening law on a simple factual issue, particularly when the Ninth Circuit has already reaffirmed *Marks*, does not amount to a "*clear case* of hardship or inequity in being required to go forward." *See Landis*, 299 U.S. at 245–55 (emphasis added). And the notion that it would be inequitable for this case to proceed is undermined by both *Marks* and *Duguid*, as in each case the Ninth Circuit remanded for further proceedings, apparently anticipating that the cases would go forward. *Marks*, 904 F.3d at 1053; *Duguid*, 926 F.3d at 1157.

Finally, even turning to the factor of judicial economy, Defendant's only argument is that the Court runs the risk of the FCC issuing an order in conflict with *Marks*. Mot. at 15–16. But as numerous district courts in this circuit have explained, *Marks* is binding authority and the orderly course of justice dictates adhering to such binding authority. *See Larson*, 2018 WL 6459964 at *5 (citing *N.L. ex rel. Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *1 (E.D. Cal. Nov. 8, 2018); *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2018 WL 5298396, at *4 (D. Ariz. Oct. 25, 2018), *appeal docketed*, No. 18-17181 (9th Cir. Nov. 9, 2018); *Keifer v. HOSOPO Corp.*, No. 3:18-cv-1353-CAB-(KSC), 2018 WL 5295011, at *1 (S.D. Cal. Oct. 25, 2018)).

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss and motion to stay the proceedings.

**IT IS SO ORDERED.**

Dated: 8/5/2019

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge