UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL IZOR,

    Plaintiff,

v.

ABACUS DATA SYSTEMS, INC,

    Defendant.

Case No. 19-cv-01057-HSG

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL FOR CLASS ACTION SETTLEMENT**

Re: Dkt. No. 69

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiff Paul Izor. *See* Dkt. No. 69. The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** the motion.

**I.   BACKGROUND**

    **A.   Factual Background**

Plaintiff brings this Telephone Consumer Protection Act, 46 U.S.C. § 227 ("TCPA"), class action against Defendant Abacus Data Systems Inc. ("Abacus") on behalf of himself and two putative classes of others similarly situated. *See generally* Dkt. No. 1 ("Compl."). Plaintiff seeks to represent two classes:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform Defendant used to text message Plaintiff, (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) it did not obtain prior express written consent.
>
> **Do Not Call Registry Class**: All persons in the United States who

> from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) texted more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the DNC for at least thirty days; (4) for a substantially similar reason that Defendant texted Plaintiff; and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) Defendant did not obtain prior express written consent.

Compl. at ¶ 26.

Defendant sells software services to professionals, including HotDocs, "a document automation software company for the legal profession." *Id.* at ¶ 1 n.2. Plaintiff alleges that Defendant, or a third party acting on behalf of Defendant, "sen[t] out unsolicited text messages to consumers purportedly 'notifying' them that their version of HotDocs is out of date and asking them to 'press y' to schedule an appointment presumably to update their accounts." *Id.* at ¶ 2, 16. For such updates, however, consumers "must pay a monthly software service fee of $75, and the appointments they schedule with Abacus are nothing more than sales pitches for HotDocs." *Id.* at ¶ 2. Plaintiff alleges that Defendant sent "two autodialed texts messages to his cellular phone." *Id.* at ¶ 4. The first text read: "HotDocs: Your HotDocs version is out of date and requires an update. Reply Y to schedule an appointment. Txt STOP to OptOut." *Id.* at ¶ 11. Plaintiff immediately texted "STOP," to which he received a second text: "AbacusNext: You opted out and will no longer receive messages from AbucusNext 8588824894." *Id.* at ¶ 20.

Plaintiff brings two causes of action under the TCPA: (1) Defendant allegedly sent unsolicited text messages using an automatic telephone dialing system ("ATDS") in violation of 47 U.S.C. § 227(b)(1)(A)(iii); and (2) Defendant allegedly violated a regulation, 47 C.F.R. § 64.1200, promulgated under the statute in violation of 47 U.S.C. § 227(c)(5). *Id.* at ¶¶ 32–44.

### B. Procedural Background

Plaintiff filed this action on February 26, 2019. *See* Dkt. No. 1. After the Court denied Defendant's motion to dismiss and motion to stay, Defendant filed an answer on August 19, 2019. Dkt. No. 45. After months of discovery, the parties engaged in a full-day mediation with mediator Bruce A. Friedman on January 31, 2020. Dkt. No. 69-2 ("Kaufman Decl.") at ¶ 18. While the mediation did not initially end in settlement, the parties reached an agreement in principle on June

5, 2020, after conducting more discovery and engaging in further settlement negotiations with Mr. Friedman. *Id.* at ¶ 7; *see also* Dkt. No. 67.

### C. Settlement Agreement

The parties entered into a settlement agreement, fully executed on June 17, 2020. Dkt. No. 69-1, Ex. 1 ("SA"). The parties filed an amendment to the settlement agreement on August 6, 2020. Dkt. No. 72-1 ("Amendment"). The key terms are as follows:

<u>Settlement Class Definition</u>: The Settlement Class is defined as:

> [A]ll regular users or subscribers of numbers assigned to a paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or any service for which the called party is charged for the call to which a text message was transmitted by Trumpia on behalf of Defendant within four years of February 26, 2019.

SA ¶ 1.1.36.

<u>Settlement Benefits</u>: Defendant will make a $1,950,000 non-reversionary Settlement Fund. *Id*. ¶¶ 1.1.40, 4.1. The Settlement Fund will include payments to the Class Members, administrative expenses (estimated between $72,496 and $103,996), Plaintiff's attorneys' fees (not to exceed $650,000) and costs (not to exceed $25,000), and any incentive payment for Lead Plaintiff (not to exceed $5,000).

In addition to the Settlement Fund, Defendant agreed that it will "implement policies and procedures to prevent against the sending of text messages without prior express consent to numbers assigned to wireless carriers using an automated telephone dialing system, and . . . will not send any telemarketing text messages to promote its products and/or services in violation of the TCPA." *Id.* at ¶ 4.3. Specifically, the parties agreed that "Defendant will not make any telemarketing calls or send any telemarketing text messages for a period of 2 years to any Settlement Class Member without an independent investigation into the existence of consent," "Defendant will obtain a subscription to the National Do Not Call Registry," Defendant will perform a quarterly spot check of 10 telemarketing calls and/or texts made on its behalf," and Defendant will require any vendors making telemarketing calls to identify any sub-vendors they use and get prior written approval to use them." Amendment at 2–3 (adding detail to SA ¶ 4.3).

Release: All Settlement Class Members will release:

> [A]ny and all claims, liabilities, demands, causes of action, or lawsuits of the Settlement Class Members, whether known or unknown, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law (such as any violations of the Telephone Consumer Protection Act, 47 USC § 227, the FCC's related regulations—including Do Not Call requirements, or unfair or deceptive practices act), and whether brought in an individual, representative, or any other capacity, (a) that were brought in the Litigation or could have been brought under state or local laws similar to the Telephone Consumer Protection Act, (b) that arise from the manner in which text messages were sent, or attempted to be sent, by or on behalf of Defendant, (c) that arise from a lack of consent for sending text messages or (d) that arise from the sending, or attempted sending, of text messages by or on behalf of Defendant to telephone numbers registered on any federal or state do not call list, within the four years preceding February 26, 2019.

*See id.* at 1–2 (amending SA ¶ 1.1.29).

Class Notice: A third-party settlement administrator will send summary class notices via first-class U.S. mail to each member of the class. SA ¶ 7.5.3. The notice will include the nature of the action; the class definition; a summary of the settlement terms; instructions on how to complete a claim form in order to receive payment; instructions on how to object to and opt out of the settlement, and relevant deadlines. *Id.* at Ex. C.

In addition to the mailed summary notices, the third-party settlement administrator will also publish a one-time summary notice "in a magazine, website, or through targeted social media ads." *Id.* at ¶ 7.5.4; *see also id.* at Ex. C. The parties indicate that the settlement administrator will use Google Display Network and Facebook Ads, which they anticipate will produce 105,000,000 impressions. *See id.* at Ex. C. Finally, the settlement administrator will set up a Settlement Website, which will include a long-form notice, within 30 days of preliminary approval. *Id.* at ¶ 7.3.1; *see also id.* at Ex. B.

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion or to object to the Settlement is 60 days after the initial mailing and electronic posting date of the notice. SA at ¶¶ 1.1.25, 10.4. In order to opt-out, the Class Member must send a written request with a clear indication that he or she would like to be excluded as well as the "Class Member's name, address, and the telephone number that allegedly received a text or text messages sent by

1    Trumpia on behalf of Defendant during the Settlement Class period." *Id.* at ¶ 10.4. Defendant has
2    the right to terminate the Settlement Agreement if the total number of opt outs exceeds 1,000. *Id.*
3    at ¶ 10.4.4.
4    <u>Claims Process and Distribution</u>: Each Class Member is entitled to submit one claim
5    through the proposed claim form. *Id*. at Ex. A. Each valid claim form submitted before the claims
6    deadline will receive a *pro rata* share of the Settlement Fund within 60 days of the date any
7    judgment becomes "Final." "'Final' means one business day following the latest of the following
8    events: (i) the expiration of three (3) business days after the time to file a motion to alter or amend
9    a judgment under Fed. R. Civ. P. 59(e) has passed without any such motion having been filed; (ii)
10   the expiration of the time in which to file an Appeal of any judgment entered pursuant to this
11   Agreement has passed without any Appeal having been taken; or (iii) the resolution of any such
12   Appeal in a manner that does not reverse or vacate the Judgment and in a manner that permits the
13   consummation of the Settlement substantially in accordance with the terms and conditions of this
14   Agreement." *Id.* at ¶ 1.1.14.
15   <u>Incentive Award</u>: The named Plaintiff may apply for an incentive award of no more than
16   $5,000. *See* Dkt. No. 69 at 11; *see also* SA at ¶ 5.
17   <u>Attorneys' Fees and Costs</u>: Class counsel intends to apply for attorneys' fees not to exceed
18   one-third of the Settlement Fund (or $650,000), as well as costs not to exceed $25,000. *See* Dkt.
19   No. 69 at 12; *see also* SA at ¶ 6.

20   **II.     PROVISIONAL CLASS CERTIFICATION**
21   The plaintiff bears the burden of showing by a preponderance of the evidence that class
22   certification is appropriate under Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v.*
23   *Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff
24   must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,
25   typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one
26   of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a
27   class under Rule 23(b)(3), she must show that "questions of law or fact common to class members
28   predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id*. at 557.

### A. Rule 23(a) Certification

#### i. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that numerosity is satisfied here because joinder of the estimated 18,722 class members would be impracticable. *See* Kaufman Decl. at ¶ 18.

#### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (emphasis in original). Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether Defendant can be held vicariously liable for the text messages sent by Trumpia, a third-party text-messaging platform. *See* Compl. at ¶ 16. Another common question of law and fact is whether Trumpia used an autodialer under the TCPA. *See* Compl. at ¶¶ 2, 26, 29, 33. Accordingly, the Court finds that the

6

1    commonality requirement is met in this case.

###      iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

Plaintiff's claims are both factually and legally similar to those of the putative class because Defendant allegedly sent unsolicited text messages advertising its products to both Plaintiff and all class members. Compl. at ¶¶ 2–3, 34. The Court finds this sufficient to satisfy the typicality requirement.

###      iv.    Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiff and her counsel have any conflicts of interest with other class members and (2) whether the named Plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or proposed class counsel have a conflict with other class members. Both Plaintiff's counsel have been appointed class counsel in many complex class actions, especially those involving the TCPA. Kaufman Decl. at ¶ 15, Ex. B, Ex. C. As evidenced

by the motions practice and discovery to date, the Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class. The adequacy of representation requirement, therefore, is satisfied.

### B. Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

#### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

The Court concludes that for purposes of settlement, common questions predominate here, because Plaintiff alleges that Defendant's text message marketing was uniform to consumers and violated the TCPA. At least the following central questions are common to all class members: (1) whether consumers received at least one substantively similar advertising text message to establish Article III standing; (2) whether Defendant may be held vicariously liable for the text messages sent by Trumpia; and (3) whether Trumpia used an autodialer under the TCPA.

#### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the

8

desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the Class Members by allocating costs among them. Especially here, where the interest of each class member in controlling the prosecution of a claim would be low, the forum is appropriate, and there are no obvious difficulties in managing this class action, the superiority requirement is met.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### iii.   Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Paul Izor as the class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

As noted above, counsel have investigated and litigated this case throughout its existence and have submitted a declaration detailing their expertise in representing plaintiffs in class action suits, especially TCPA class actions. *See* Kaufman Decl. at ¶ 15, Ex. B, Ex. C. Accordingly, the Court appoints Plaintiff's counsel, Rachel E. Kaufman and Avi R. Kaufman of the law firm of Kaufman, P.C., and Stefan Coleman of the Law Offices of Stefan Coleman, P.A. as Class Counsel.

## III.   PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court now considers whether it should preliminarily approve the parties' class action settlement.

9

### A. Legal Standard

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id*. (citations and quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Serious, Informed, Non-Collusive Negotiations

The first factor the Court considers is whether there is evidence of collusion or other

10

conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

As discussed above, this proposed settlement was reached after significant discovery and with the assistance of a neutral mediator. The proposed settlement is non-reversionary, with distributions to class members determined on a *pro rata* basis. SA at ¶ 4.4.4. Additionally, the Settlement Agreement does not contain a clear sailing arrangement. *Id.* at ¶ 6. Class Counsel confirms that it will seek fees no greater than one-third of the Settlement Fund. Dkt. No. 69 at 12. The Court will assume the role of a fiduciary for Class Members in determining whether awarding fees in the amount eventually requested would be disproportionate. *See Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs.") (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). While nothing in the current record regarding the fee request raises any clear red flags, the Court is cognizant of its obligation to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case.

Accordingly, the Court preliminarily finds that there is no evidence of collusion or conflicts of interest in this Settlement and finds that this factor weighs in favor of preliminary approval.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have

11

1    consistently stated that preliminary approval of a class action settlement is inappropriate where the
2    proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*,
3    2018 WL 6099948, at *8 (quotations omitted).
4          Although the Settlement Agreement authorizes Representative Plaintiff to seek an
5    incentive award for his role in this lawsuit, *see* SA at ¶ 5.1, the Court ultimately will determine
6    whether he is entitled to such an award and the reasonableness of the amount requested. Incentive
7    awards "are intended to compensate class representatives for work done on behalf of the class, to
8    make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West*
9    *Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). In his petition, Plaintiff must provide
10   sufficient evidence to allow the Court to evaluate his award "individually, using 'relevant factors
11   includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to
12   which the class has benefitted from those actions, . . . [and] the amount of time and effort the
13   plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th
14   Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and
15   evaluate the reasonableness of any incentive award request. Nevertheless, because incentive
16   awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary
17   approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in
18   class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

20         The third factor the Court considers is whether the settlement is within the range of
21   possible approval. To evaluate whether the settlement amount is adequate, "courts primarily
22   consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*,
23   2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.
24         The TCPA provides for $500 in statutory damages for each violation. However, a
25   proposed settlement may be acceptable even if it "amount[s] to only a fraction of the potential
26   recovery." *Van Ba Ma v. Covidien Holding, Inc.*, No. 12-cv-2161-DOC, 2014 WL 2472316, at *3
27   (C.D. Cal. May 30, 2014) (quoting *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal.
28   1979)). Here, the $1,950,000 Settlement Fund amounts to approximately $105 per Class Member

after the deduction of administration costs, attorneys' fees and costs, and any incentive award. Kaufman Decl. at ¶ 17. The parties anticipate that the likely Class Member participation rate will result in a recovery of $400 to $600 per Class Member. *Id.* At the hearing the parties represented that this assumes a participation or claims rate of 10–15%. Plaintiff acknowledges that there are significant risks and barriers he would face in continuing to litigate this case, such as class certification, summary judgment and *Daubert* motions, prevailing at trial, and the possibility of an unfavorable decision by the Supreme Court in *Barr v. American Association of Political Consultants Inc.,* No. 19-631. *See* Dkt. No. 69 at 19. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*     \*     \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;

13

      (v)     that the court will exclude from the class any member who requests exclusion;
      (vi)    the time and manner for requesting exclusion; and
      (vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will facilitate three different forms of notice: (1) direct mail of the Summary Notice to each absent class member, (2) publication on Google Display Network and Facebook Ads of the Summary Notice, and (3) Long-Form Notice placed on the Settlement Website. SA at ¶¶ 7, 7.5.4. Defendant will provide the administrator with the telephone numbers for all absent class members within 10 days of this Order. *Id.* at ¶ 7.5.2. The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045.

As to the substance of the notice, the parties have attached copies of their proposed class Summary Notice and Long-Form Notice to the Settlement Agreement. SA at Ex. B, Ex. C. The Summary Notice includes the class definition, the settlement terms, the claims process, the opt-out or objection procedure and deadlines, and the settlement website address. *Id.* at Ex. B. The Long-Form Notice includes more detailed information regarding all of the Summary Notice components, as well as an explanation of the release terms. *Id.* at Ex. C.

Both Notices also inform class members that Class Counsel's motion for attorneys' fees and costs, and Plaintiff's request up to $5,000 for his service as Class Representative, will be considered at the Final Approval Hearing. *Id.* at Ex. B, C. To enable Class Members to review the motion for attorneys' fees and the motion for incentive award, Class Counsel shall include language in the settlement notice: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiff's incentive award; (2) specifically stating the deadline for any Class Member objections to these motions; and (3) informing Class Members that the motion and supporting materials will be available for viewing on class counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). The Court therefore finds that with these changes, the content of the proposed notice

provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval. The parties are **DIRECTED** to meet and confer and stipulate to a schedule with firm dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

**IT IS SO ORDERED.**

Dated: 8/24/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

15