Rachel E. Kaufman (CA Bar No. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro hac vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff Izor and all others similarly situated*
(Additional counsel appearing on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAUL IZOR,** individually and on behalf of all) others similarly situated,<br><br>   *Plaintiff,*<br><br>*v.*<br><br>**ABACUS DATA SYSTEMS INC.,** a California corporation,<br><br>   *Defendant.* | Case No. 4:19-cv-01057-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, RESPONSE TO OBJECTION, AND INCORPORATED MEMORANDUM OF LAW**<br><br>Hearing Date: December 17, 2020<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

  **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE** that on December 17, 2020 at 2:00 p.m. or as soon thereafter as this matter may be heard in Courtroom 2 – 4th Floor of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, before the Honorable Haywood S. Gilliam, Jr., Plaintiff Paul Izor will and hereby does

move the Court, by and through Class Counsel, for entry of an order granting final approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying the Settlement Class for settlement purposes, approving the Notice to the Settlement Class, and denying the one objection to the settlement, which was filed by a non-class member.[1] This Motion is based on and supported by this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Avi R. Kaufman, the Declaration of the Settlement Administrator, all pleadings, records and papers on file, and such other matters that may be presented to the Court.

Date: December 1, 2020                    Respectfully submitted,

                                          By: *s/ Rachel E. Kaufman*
                                          Rachel E. Kaufman, Esq.
                                          Avi R. Kaufman, Esq.
                                          Kaufman P.A.

                                          *Attorneys for Plaintiff Paul Izor*
                                          *and the Settlement Class*

---

[1] The Class Action Settlement Agreement, filed with the Court as docket entry number 69-1 on June 17, 2020, and Amendment 1 to Class Action Settlement Agreement, filed with the Court as docket entry number 72-1 on August 6, 2020 (jointly referred to herein as the "Agreement" or "Settlement Agreement"), are attached as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

2

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ............................................................................................ 2

III.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT.......................... 5

IV.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE  ............... 6

        a.  The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair,
            Reasonable, and Adequate ...................................................................... 7

            i.  The Strength of Plaintiff's Case Compared to the Risks of Further Litigation
                Supports Final Approval ................................................................ 8

            ii. The Risks of Maintaining Class Action Status Through Trial Support Final
                Approval ....................................................................................... 9

            iii. The Monetary and Injunctive Relief Provided by the Settlement Support Final
                Approval ....................................................................................... 9

            iv. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly
                Resolve the Case  ....................................................................... 10

            v. Class Counsel's Experience and Views of the Settlement Support Final Approval
                ..................................................................................................... 11

            vi. The Reaction of the Settlement Class Members Supports Final Approval......... 12

        b.  Notice Was the Best Practicable and Was Reasonably Calculated to Inform the
            Settlement Class of its Rights ............................................................... 15

        c.  The Settlement Class Should Be Finally Certified .................................... 16

V.      CONCLUSION............................................................................................ 19

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631 ........................ 4, 9

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................ 8

*Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) ..................................................................................................................... 4, 9

*Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) ....................................................................................................................... 10

*Facebook, Inc. v. Duguid*, No. 19-511 ................................................................................. 4, 9

*Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) .................................................................................................. 10

*Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133 (E.D. Cal. July 26, 2017) ................................................................................................... 7

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..................................................... 17

*Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) .. 15

*In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015).................... 8

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ........................................ 12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ..................................... 7

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ....................................................... 6

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)..................................... 9

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)............................................................................................. 7

*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) ................................................ 14

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018) ............................. 19

*Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75 (S.D.N.Y. 1980) ..................................................... 12

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ...................................... 18

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) ............................................................................................................. 10

*Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ...................................................................................................... 9, 10

*Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012).............................................................................. 10

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)........ 8, 12, 13

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615 (9th Cir. 1982)........................................ 8

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................... 7

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ................................................................................................................. 7

*Somogyi v. Freedom Mortg. Corp.*, No. 17-6546 (RMB/JS), 2020 U.S. Dist. LEXIS 194035 (D.N.J. Oct. 20, 2020).................................................................................................. 14

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016) .................................................. 18

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998) ............................................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................. 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................... 6

*Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156 (C.D. Cal. Dec. 22, 2014) ..................................................... 8

*Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010)................................................................................. 11

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)................................. 17

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...................................................... 10, 19

**Other Authorities**

*Manual for Compl. Lit.* § 21.312 ............................................................................... 15, 16

*Newberg on Class Actions* § 11.41 (4th ed. 2002)............................................................................ 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3

4       As explained in Plaintiff's preliminary approval papers and further herein, the Settlement

5  Agreement provides exceptional relief to the Settlement Class. The Settlement Agreement

6  establishes a non-reversionary Settlement Fund in the amount of $1,950,000 for the benefit of the

7  Settlement Class, which will also be used to pay the settlement costs.  Based on the current claims

8  rate, this equates to nearly $400[2] per claiming Settlement Class Member; a truly exceptional

9  result. Declaration of Avi Kaufman ¶ 2, attached hereto as Exhibit 2. In addition to this excellent

10 monetary result, Defendant has agreed to broad injunctive relief aimed at curbing future

11 Telephone Consumer Protection Act violations directed towards Settlement Class Members and

12 the public at large.  Specifically, Defendant has agreed to stop making TCPA violative calls and

13 to take actions to prevent TCPA violations by its vendors and any subvendors. *Id*.

14       No Settlement Class Members have opted out, and no Settlement Class Members have

15 objected.  (In fact, as discussed below, the only objection to the Settlement is from a serial objector

16 who is not a Settlement Class Member, and whose objection is unsupported and otherwise

17 baseless.)  In addition, due to the robust notice efforts, as of December 1, 2020, 2,793 Settlement

18 Class Members have submitted claims—a claims rate of more than 15%.  If the Court grants the

19 relief requested in this Motion, each claiming Settlement Class Member will receive nearly $400.

20       Ultimately, the Settlement will bring an end to what has otherwise been, and likely would

21 continue to be, hard-fought litigation centered on unsettled legal questions, provides Class

22 Members with outstanding monetary and injunctive relief, and should be finally approved.

23       Therefore, for the reasons set forth in this memorandum and in the papers previously

24 submitted in support of approval, Plaintiff respectfully requests that the Court grant final approval

25

26 ───────────────

[2] This estimate is based on a pro rata distribution after deduction of the anticipated settlement

27 administration costs, requested service award, and requested attorneys' fees of one-third of the
   Settlement Fund.

28

of the Parties' Settlement Agreement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, reasonable, and adequate for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; and (4) approving payment to the claims administrator in an amount not to exceed $105,000. The Parties request entry of the agreed proposed order filed herewith, attached as Exhibit 3 to this Motion, at or after the fairness hearing.

## II.    **BACKGROUND**

On February 26, 2019, Plaintiff filed the Complaint against Abacus Data Systems Inc. in this action asserting claims under the TCPA's autodialer and do not call list provisions. [D.E. 1]. On April 22, 2019, Abacus filed a Motion to Dismiss and to Stay the Proceedings pending FCC Guidance concerning what constitutes an autodialer under the TCPA [D.E. 21]. On May 6, 2019, Plaintiff responded in opposition to the Motion to Dismiss and to Stay [D.E. 23]. On May 13, 2019, Abacus replied in support of the Motion to Dismiss and to Stay [D.E. 24]. On August 5, 2019, the Court denied Defendant's Motion to Dismiss and to Stay [D.E. 37].

On August 8, 2019, the Court held an initial case management conference and thereafter entered a scheduling order. Defendant answered the Complaint on August 19, 2019 [D.E. 45].

Thereafter, the parties engaged in extensive discovery involving, among other things, multiple, extended meet and confers through which the parties were able to resolve their discovery disputes without the need for motion practice. Kaufman Decl. at ¶ 4. More specifically, as part of discovery, each party served, responded to, and produced documents responsive to two waves of written discovery requests. *Id*. Plaintiff also engaged in extensive third party discovery, resulting in, among other things, the filing of a subpoena enforcement action against Trumpia in the Central District of California and Trumpia's production of thousands of pages of documents and communications relevant to this action, including the text messaging logs used to identify Settlement Class Members. *Id*. In connection with designating an expert witness concerning whether Trumpia's text messaging platform constitutes an autodialer under the TCPA, Plaintiff

and Plaintiff's expert also inspected non-party Trumpia's text messaging platform. *Id*. Additionally, Plaintiff's, Plaintiff's expert's, and various Defendant employees' depositions were scheduled to occur within days of when the parties ultimately reached an agreement in principle to settle this action (and, given the logistical challenges presented by Covid-19, Plaintiff, Plaintiff's expert, and Plaintiff's counsel had been prepared for those depositions, including through an exhaustive review of all of the discovery up to that point). *Id*.

On January 31, 2020, Plaintiff served his expert witness disclosures, including the expert report of telecommunications systems expert Randall A. Snyder, centering on whether the system used to send text messages to Settlement Class Members was an autodialer under the TCPA. Kaufman Decl. at ¶ 5.

Around that time, the Parties began settlement negotiations and scheduled mediation. Kaufman Decl. at ¶ 6. Based on the Parties' analyses of the relative strengths and weaknesses of their cases through formal and informal discovery, on February 19, 2020, the Parties engaged in a full-day, contentious mediation in Los Angeles with JAMS mediator Bruce A. Friedman. *Id*. The mediation did not result in settlement, but did, among other things, involve the initial exchange of information concerning Abacus's financial condition. *Id*.

During nearly four months of additional adversarial litigation, including, among other things, briefing Defendant's Motion to Stay pending a ruling from the Supreme Court concerning the constitutionality of the TCPA [D.E. 50, 58, 60, 62, 63], which the Court denied on April 13, 2020 [D.E. 64], the parties engaged in further settlement negotiations with the assistance of Mr. Friedman, ultimately reaching an agreement in principle as to a class wide resolution culminating in the Settlement Agreement. Kaufman Decl. at ¶ 7.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. Kaufman Decl. at ¶ 8. Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final

judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and particularly the risk that a change in the law, including a ruling by the Supreme Court or this Court concerning the constitutionality of the TCPA or an interpretation from the Supreme Court or Federal Communications Commission regarding what constitutes an autodialer under the TCPA, could nullify Plaintiff's claims. *Id.*; *see Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631; *Facebook, Inc. v. Duguid*, No. 19-511; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020). Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate monetary and non-monetary benefits upon the Settlement Class whereas continued and protracted litigation, even if successful, may have ultimately delivered none. *Id.* Based on their evaluation of all these factors, Plaintiff and Plaintiff's counsel determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. *Id.*

The Settlement Agreement establishes a Settlement Class of:

All regular users or subscribers of numbers assigned to a paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or any service for which the called party is charged for the call to which a text message was transmitted by Trumpia on behalf of Defendant within four years of February 26, 2019.

Agreement at ¶ 1.1.36.

The Settlement Fund will be distributed *pro rata* to claiming Settlement Class Members. After deducting the estimated notice and administration costs, Class Counsel fees and expenses, and a Service Award from the Settlement Fund, each Claimant will receive a *pro rata* distribution of nearly $400. Kaufman Decl. at ¶ 9.

In addition, Defendant has agreed to broad injunctive relief that will prevent future TCPA violations aimed at Settlement Class Members and the public at large.  Specifically, Defendant has agreed: (1) to not send any marketing text messages for a period of 2 years to any Settlement Class Member without an independent investigation into the existence of consent to text message

a particular class member; (2) to obtain a subscription to the National Do Not Call Registry; (3) to perform a quarterly spot check of 10 telemarketing calls for TCPA consent and will any vendors that do not deliver such consent; and (4) to will require their vendors making telemarketing calls to identify any sub-vendors they use and get prior written approval to use them.

The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendant's defenses, the uncertainties of contested litigation, and the everchanging TCPA landscape, including district courts' ongoing scrutiny of the constitutionality of the TCPA, and the Supreme Court's and FCC's pending decisions regarding the TCPA's autodialer provision. *See* Kaufman Decl. at ¶ 10.

## III.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Order Granting Preliminary Approval of the Settlement on August 24, 2020. [D.E. 73]. Both before and after that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Settlement Agreement. *Id*. at ¶ 12; Declaration of Settlement Administrator attached as Exhibit 4.

Specifically, on August 31, 2020, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General. Settlement Administrator Decl. at ¶ 14.

On June 25, 2020, counsel provided the Settlement Administrator with one electronic file containing potential Settlement Class Member records. *Id*. at ¶ 15. This file contained a list of 18,719 unique phone numbers for Settlement Class Members. *Id*.

On September 16, 2020 and September 17, 2020, Epiq launched the Settlement website and the toll-free Settlement information hotline. *Id*. at ¶¶ 25, 27. Since that time, there have been more than 34,000 unique visits to the Settlement website and more than 100 calls to the toll-free Settlement information hotline. *Id*. at ¶¶ 26, 28.

On September 18, 2020, Epiq mailed Summary Notices via First Class USPS Mail to 16,820 identifiable, potential Settlement Class Members with a mailing address. *Id*. at ¶¶ 16-17.

From September 18, 2020 through October 17, 2020, Epiq published banner notices Google Display Network websites and on Facebook. *Id*. at ¶¶ 21-24.

In total, including efforts to remail Summary Notices that were initially returned as undeliverable, Epiq has delivered direct, mailed Summary Notices to 86.9% of Settlement Class Members. *Id*. at ¶ 20. In addition, Epiq's published banner ads generated approximately 112.7 million impressions nationwide, extending the Notice Plan's total reach to approximately 90.7% of Settlement Class Members. *Id*. at ¶¶ 21, 24. And in response to these robust notice efforts, 2,793 Settlement Class Members have submitted claims, no potential Settlement Class Members have opted out, and no Settlement Class Members have filed or otherwise submitted objections regarding the Settlement. *Id*. at ¶¶ 29-30.[3]

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *E.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The policy favoring settlement is especially relevant in class actions in which the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain through a judgment. *See*, *e.g.*, *id.*; *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

In the Ninth Circuit, to assess the fairness of a class-action settlement there are eight factors a court may consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

---

[3] Although Settlement Class Members were required to file objections with the Court, in an abundance of caution, both Epiq and Class Counsel reviewed all correspondence received by Epiq concerning the Settlement to confirm that no objections were sent to Epiq. Kaufman Decl. at ¶ 13.

throughout the trial; (4) the relief provided by the settlement; (5) the extent of discovery completed and the stage of the proceedings at which a settlement was reached; (6) plaintiff's counsel's views of the case in light of their experience; (7) the presence of a governmental participant; and (8) the reaction of the absent members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). In assessing a settlement, a court is asked to exercise its discretion only "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). An evaluation of the relevant factors for determining whether the Parties' Settlement here is fair, reasonable, and adequate, overwhelmingly supports the granting of final approval.

### a. The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate

"The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133, at *20 (E.D. Cal. July 26, 2017) (finding that a settlement was entitled to a presumption of fairness because it resulted from a full day of mediation with a mediator); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (citing *Rodriguez*, 563 F.3d at 965) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement in this action is the result of protracted settlement negotiations with the assistance of JAMS mediator Bruce Friedman for four months following a full-day, contentious mediation in Los Angeles with Mr. Friedman, who has extensive experience assisting parties in resolving TCPA class actions. Kaufman Decl. at ¶¶ 6, 7; *see In re Cap. One Tel. Consumer Prot.*

*Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (finally approving class action settlement with estimated payout of $39.66 per claiming class member).  The Settlement is therefore entitled to a presumption of fairness.  But, even without a presumption of fairness, an objective evaluation of the relevant Ninth Circuit factors for determining whether the Settlement is fair, reasonable, and adequate confirms that it is overwhelmingly so.  *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156, at *16 (C.D. Cal. Dec. 22, 2014) (discussing that a court should "objectively" evaluate the "strengths and weaknesses inherent in the litigation") (internal citation omitted).

### i. The Strength of Plaintiff's Case Compared to the Risks of Further Litigation Supports Final Approval

As the Ninth Circuit has instructed, in assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). There is "no particular formula" to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez*, 563 F.3d at 965. Moreover, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (*citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and particularly the risk that a change in the law, including a ruling by the Supreme Court or this Court concerning the constitutionality of the TCPA or an interpretation from the Supreme Court or Federal Communications Commission regarding what constitutes an autodialer under the

TCPA, could nullify Plaintiff's claims. Kaufman Decl. at ¶ 8; *see Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631; *Facebook, Inc. v. Duguid*, No. 19-511; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020).

These risks must be balanced against the extraordinary anticipated Settlement result: if the Settlement is finally approved, claiming Settlement Class Members will each receive nearly $400 in immediate monetary relief. Additionally, as a direct result of this litigation, Defendant has agreed to substantive injunctive relief. This factor therefore weighs in favor of final approval. *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### ii. The Risks of Maintaining Class Action Status Through Trial Support Final Approval

The risk that a class may not be certified also favors final approval. Kaufman Decl. at ¶ 8; *see Wannemacher*, 2014 U.S. Dist. LEXIS 199156, at *18 (finding that where motion for class certification had not been filed the risk that the class would not be certified weighed in favor of approving the settlement). If litigation had continued, Defendant would have argued that consent and other defenses could not be determined on a class basis, and that, therefore, class certification would be inappropriate. Kaufman Decl. at ¶ 8. The risks inherent in proceeding with class litigation weigh strongly in favor of final approval.

### iii. The Monetary and Injunctive Relief Provided by the Settlement Support Final Approval

In evaluating the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "Thus, when analyzing the amount offered in settlement, the Court should examine 'the complete package taken as a whole,' and the amount

9

is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Morales*, 2011 U.S. Dist. LEXIS 130604, at *28.

The non-reversionary $1,950,000 settlement amount provides much more than "a fraction of the potential recovery" to Settlement Class Members. Class members that submit claims will each receive a monetary payout of nearly $400. This is an excellent result that far exceeds the payout in many other court approved TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40). And in addition to providing significant monetary relief for the Settlement Class's benefit, Defendant has agreed to implement policies and procedures to prevent against telemarketing in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Kaufman Decl. at ¶ 2.

What the Settlement Class releases through the settlement is related to what the Class gains. In this case, the release from Settlement Class Members to Defendant is narrowly tailored to claims arising from the text messages at issue. Kaufman Decl. at ¶ 11.

The monetary and remedial relief here are a fair and meaningful outcome in Settlement Class Members' favor, and places the Settlement well within the range of approval.

### iv.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case

Discovery has advanced far enough to allow parties to responsibly resolve a case where the parties have exchanged meaningful evidence and information relating to the key issues in the case prior to settlement negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (holding that

settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

Here, discovery was nearly completed when the Parties reached Settlement. Kaufman Decl. at ¶ 16. Plaintiff served and received responses and responsive documents to two sets of written discovery to Defendant, responded to two sets of written discovery from Defendant, issued and received responses to third party discovery, prepared for depositions, and engaged in the informal exchange of additional information concerning Defendant, including financial information, before finalizing the proposed Settlement. *Id*. From the start, Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims, including by engaging and obtaining testimony from a telecommunications systems expert, and engaged in extensive discovery. *Id*. Class Counsel's understanding of the key issues driving the litigation, including the likelihood of class certification, the strength of Defendant's consent and other defenses, and the ever-shifting TCPA law landscape, prepared them for well-informed settlement negotiations. *Id*.  As a result, the Settlement here was the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  *Id*.

### v.  Class Counsel's Experience and Views of the Settlement Support Final Approval

Settlement recommendations of competent counsel are accorded "great weight" by the Courts since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citations omitted). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the

hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.   Kaufman Decl. at ¶ 16. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id.* at ¶¶ 17-21. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation, and continue to do so. *Id.* at ¶ 22. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in obtaining class certification, and prevailing at trial and on appeal. *Id.* at ¶ 23. The success of Plaintiff's claims turn on questions that would arise at class certification, summary judgment, trial, during an inevitable post-judgment appeal, and in proceedings before the Supreme Court and FCC to which Plaintiff is not a party. *Id.* Under the circumstances, Class Counsel appropriately determined that the benefits of the Settlement outweigh the risks of continued litigation. *Id.* And the absence of any opt outs and objections from Settlement Class Members, strongly support Class Counsel's conclusion.

### vi.   The Reaction of the Settlement Class Members Supports Final Approval

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (granting final approval where 47,336 class members submitted claims, only 57 timely opted out, and six filed objections); *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement

raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Here, the Settlement Class unanimously endorses the Settlement. No Settlement Class Members have opted out or objected. Kaufman Decl. at ¶ 13. In fact, the only objection to the settlement was filed by a serial objector who is not a class member and who was disbarred by the State of California, in part, as a result of misleading a court regarding an objection to a class action settlement. *Id*.; Settlement Administrator Decl. at ¶ 29. More important, the objection lacks merit in all respects.

First, the Notice Plan and notices approved by the Court were the best practicable notice and informed Settlement Class Members of their rights. Kaufman Decl. at ¶ 24. The notices advised Settlement Class members of the substantive terms of the Settlement, their options for remaining part of the Settlement Class, for objecting to the Settlement or to Class Counsel's Attorneys' fee application and request for Service Award, for opting-out of the Settlement, and to obtain additional information about the Settlement. *Id*. The notices also advised Settlement Class Members that they could file claims by mail or on the Settlement website (to avoid any post-marking or postal service related issues)[4] and of the amount estimated to be paid to each Claimant (which was ultimately an accurate estimate). *Id*. In total, notice reached more than 90% of the Settlement Class, advised them of, and provided them ample time to exercise, their rights, and resulted in nearly 3,000 claims (a claims rate of over 15%). Settlement Administrator Decl. at ¶¶ 16, 23, 25, 27, 29, 30, 34.

Second, the requested attorneys' fees are appropriate. As explained in detail in Class Counsel's Motion for Service Award and Class Counsel Fees and Costs, the request reflects the risk and exceptional monetary and injunctive relief corresponding to this case, is justified in light

---

[4] Oddly, although the objector asserts that he "could not comply with the" Settlement related deadlines and that his "objection is dated earlier," although not a Settlement Class Member, the objector did in fact serve his objection prior to the objection deadline on October 27, 2020, the date of his objection.

of Class Counsel's significant experience in TCPA litigation specifically, which was essential to achieving the favorable outcome for the Settlement Class, is in line with amounts approved in similar TCPA class action settlements in this Circuit, and results in a lodestar multiplier of less than 1.5 as a result of the advanced stage of the litigation at the time the case was settled.

Third, the release is narrowly tailored to the claims that were or could have been asserted in the litigation, and is otherwise intended to comply with the identical factual predicate doctrine. Kaufman Decl. at ¶ 11.

Fourth, consistent with Ninth Circuit practice, and this District's rules, Class Counsel timely filed an application for a service award and for attorneys' fees and costs. The objector cites *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), to argue that fee awards and service awards "are not lawful pursuant to binding circuit precedent." However, *Johnson* is not binding circuit precedent and does not hold that fee awards are unlawful. Moreover, to the extent that it holds that service awards are inappropriate, *Johnson*, a first of its kind decision, is an outlier and inconsistent with current jurisprudence, as explained by Judge Martin's dissent:

> The majority's decision to do away with incentive awards for class representatives in class actions takes our court out of the mainstream. To date, none of our sister circuit courts have imposed a rule prohibiting incentive awards…But upon deciding to undertake this issue here, the majority skips any analysis about our modern authority to approve these awards. It goes straight to decisions from the 1880s that do not reflect the current views of the Supreme Court or other circuits. The majority never properly addresses the main issue before us: whether the incentive award created a conflict between Mr. Johnson and absent class members. I would answer this question by engaging in the fairness analysis called for by our precedent. And that analysis leads me to say the District Court did not abuse its discretion in approving an award of $6,000 to Mr. Johnson.

*Johnson*, 975 F.3d 1244. Indeed, the only reported decisions outside of the Eleventh Circuit that have considered *Johnson* have rejected applying it to their approval of class settlements. *See Somogyi v. Freedom Mortg. Corp.,* No. 17-6546 (RMB/JS), 2020 U.S. Dist. LEXIS 194035, at *27 (D.N.J. Oct. 20, 2020) (Approving a TCPA settlement holding "there is substantial precedent

14

from this Circuit supporting approval of incentive payments. Until and unless the Supreme Court or Third Circuit bars incentive awards or payments to class plaintiffs, they will be approved by this Court if appropriate under the circumstances. Here the incentive payments to the class plaintiffs is appropriate given their substantial contribution to the successful settlement of the case."); *Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *31 (S.D.N.Y. Sep. 22, 2020) (discussing *Johnson* and then awarding each class representative $5,000).

Moreover, contrary to the objector's accusations, Plaintiff was not promised money and Class Counsel was not required to request a service award that increased on a sliding scale as the class's monetary recovery increased. Kaufman Decl. at ¶ 29.   There is absolutely no basis to conclude otherwise or to find that Plaintiff has any interests inconsistent with the Settlement Class's interests. *Id.* Just as there is no basis to conclude that Class Counsel are inadequate or have a conflict of interest with the Settlement Class.  To the contrary, Class Counsel have vigorously litigated this action and will continue to vigorously prosecute this matter through completion. *Id.* at ¶ 22.

Accordingly, Settlement Class Members' reaction to the Settlement weighs strongly in favor of final approval, and the single, groundless objection from a non-Settlement Class Member does not provide a basis for concluding otherwise.

### b.  Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only

15

must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.* § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As approved by the Court, the Notice Program included direct mail notice and publication notice. The notices advised Settlement Class members of the substantive terms of the Settlement, their options for remaining part of the Settlement Class, for objecting to the Settlement or to Class Counsel's Attorneys' fee application and request for Service Award, and for opting-out of the Settlement, and how to obtain additional information about the Settlement. Kaufman Decl. at ¶ 23. In total, notice reached more than 90% of the Settlement Class. Settlement Administrator Decl. at ¶ 34. As a result, the notice to the Settlement Class was the best practicable notice, because it was intended to, and in fact did, inform the Settlement Class of its rights. Kaufman Decl. at ¶ 23.

### c. **The Settlement Class Should Be Finally Certified**

This Court conditionally certified the Settlement Class for settlement purposes only. [D.E. 73]. For all the reasons set forth in Plaintiff's preliminary approval briefing, incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Settlement Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Specifically, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 18,719 persons identifiable from the text messaging logs produced by Trumpia in discovery, and joinder of all Settlement Class Members is impracticable. Kaufman Decl. at ¶ 25; *see* Fed. R. Civ. P. 23(a)(1).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is

16

capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied. Kaufman Decl. at ¶ 26. There are multiple questions of law and fact that are common to the Settlement Class that would generate common answers. *Id*. These questions are directly guided by Defendant's defenses, including whether the Trumpia text messaging platform used to text message all Settlement Class Members constitutes an autodialer under the TCPA; whether Defendant is vicariously liable for text messages sent by Trumpia to all Settlement Class Members; whether these text message recipients have Article III standing based on receiving one or more substantively similar marketing text message; whether Defendant had consent to send the text messages based on the existence of a prior business relationship between it and text message recipients; and whether Defendant is entitled to rely on a safe harbor defense as to all Settlement Class Members based on its general business practices, including specifically its alleged substantial compliance with the TCPA. *Id*.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiff suffers a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff is typical of the Settlement Class Members because he received unsolicited text messages on behalf of Defendant from Trumpia, is a Settlement Class Member, and will benefit in the same way as other Settlement Class Members from the relief provided by the Settlement. Kaufman Decl. at ¶ 27.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff to not have interests antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff is a Settlement Class Member and has the same interest as other Settlement Class Members in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Kaufman Decl. at ¶ 28. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. *Id*. at ¶¶ 16-20; *see* Declaration of Stefan Coleman [D.E. 77-4] at ¶¶ 3-5. Class Counsel have vigorously litigated this action and will continue to vigorously prosecute this matter through completion. Kaufman Decl. at ¶ 22.

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons, Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted). The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Settlement Class Members – including whether Trumpia's platform used to text message all Settlement Class Members constitutes an autodialer under the TCPA; whether Defendant is vicariously liable for text messages sent by Trumpia to all Settlement Class Members; whether these text message recipients have Article III standing based on receiving one or more substantively similar marketing text message; whether Defendant had consent to send the text messages based on the existence of a prior business relationship between it and text message recipients; and whether Defendant is entitled to rely on a safe harbor defense as to all Settlement Class Members based on its general business practices, including specifically its alleged

substantial compliance with the TCPA – substantially outweigh any possible issues that are individual to each Settlement Class Member. Kaufman Decl. at ¶ 29.

Relatedly, the Settlement Class satisfies Rule 23(b)(3)'s superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff's "claims under the TCPA." *See id*.; *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

For these reasons, the Court should certify the Settlement Class.

## V.   CONCLUSION

The Settlement securing $1,950,000 in immediate monetary relief represents an excellent result for the Settlement Class given the risks and obstacles in this Action. Moreover, Defendant has agreed to broad injunctive relief to prevent against telemarketing in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).  Accordingly, for the foregoing reasons, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class; (3) appoint as Class Representative the Plaintiff, Paul Izor; (4) appoint as Class Counsel Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A. and Stefan Coleman of Law Offices of Stefan Coleman P.A.; (5) deny the one objection to the settlement filed by a non-Settlement Class Member; and (6) enter Final Judgment.

Date: December 1, 2020                    Respectfully submitted,

By: *s/ Rachel E. Kaufman*
Rachel E. Kaufman, Esq. (CA Bar No. 259353)
Avi R. Kaufman, Esq.
Kᴀᴜꜰᴍᴀɴ P.A.

19

400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com
Email: kaufman@kaufmanpa.com

Stefan L. Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN, P.A.
11 Broadway Suite 615
New York, NY  10004-1490
Telephone: 887-333-9427
Fax: 888-498-8946
Email: Law@stefancoleman.com

David S. Ratner, Esq. (SBN 316267)
DAVID RATNER LAW FIRM, LLP
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
Email: david@davidratnerlawfirm.com

*Attorneys for Plaintiff Paul Izor*
*and the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and it is being served this day on all

counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Rachel E. Kaufman*
Rachel E. Kaufman

20
Motion for Final Approval of Class Action Settlement
Case no. 4:19-cv-01057-HSG