UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL IZOR,<br><br>    Plaintiff,<br><br>v.<br><br>ABACUS DATA SYSTEMS, INC,<br><br>    Defendant. | Case No. 19-cv-01057-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD**<br><br>Re: Dkt. Nos. 77, 79 |

Pending before the Court are Plaintiff's motions for final approval of class action settlement and for attorneys' fees, costs and expenses, and a class representative enhancement payment. Dkt. Nos. 77, 79. The Court held a final fairness hearing on December 17, 2020. Dkt. No. 85. For the reasons set forth below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorneys' fees, costs and expenses, and enhancement payment.

**I.  BACKGROUND**

    **A.  Factual Background**

Plaintiff Paul Izor filed this Telephone Consumer Protection Act, 46 U.S.C. § 227 ("TCPA"), class action against Defendant Abacus Data Systems Inc. ("Abacus") on behalf of himself and two putative classes of others similarly situated. *See generally* Dkt. No. 1 ("Compl."). Plaintiff sought to represent two classes:

> **Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform Defendant used to text message Plaintiff, (4) for

whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) it did not obtain prior express written consent.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) texted more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the DNC for at least thirty days; (4) for a substantially similar reason that Defendant texted Plaintiff; and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to text message Plaintiff, or (b) Defendant did not obtain prior express written consent.

Compl. at ¶ 26.

Defendant sells software services to professionals, including HotDocs, "a document automation software company for the legal profession." *Id.* at ¶ 1 n.2. Plaintiff alleges that Defendant, or a third party acting on behalf of Defendant, "sen[t] out unsolicited text messages to consumers purportedly 'notifying' them that their version of HotDocs is out of date and asking them to 'press y' to schedule an appointment presumably to update their accounts." *Id.* at ¶ 2, 16. For such updates, however, consumers "must pay a monthly software service fee of $75, and the appointments they schedule with Abacus are nothing more than sales pitches for HotDocs." *Id.* at ¶ 2. Plaintiff alleges that Defendant sent "two autodialed texts messages to his cellular phone." *Id.* at ¶ 4. The first text read: "HotDocs: Your HotDocs version is out of date and requires an update. Reply Y to schedule an appointment. Txt STOP to OptOut." *Id.* at ¶ 11. Plaintiff immediately texted "STOP," to which he received a second text: "AbacusNext: You opted out and will no longer receive messages from AbucusNext 8588824894." *Id.* at ¶ 20.

Plaintiff brought two causes of action under the TCPA: (1) Defendant allegedly sent unsolicited text messages using an automatic telephone dialing system ("ATDS") in violation of 47 U.S.C. § 227(b)(1)(A)(iii); and (2) Defendant allegedly violated a regulation, 47 C.F.R. § 64.1200, promulgated under 47 U.S.C. § 227(c)(5). *Id.* at ¶¶ 32–44.

**B.     Procedural Background**

Plaintiff filed this action on February 26, 2019. *See* Dkt. No. 1. After the Court denied

2

1  Defendant's motion to dismiss and motion to stay, Defendant filed an answer on August 19, 2019.
2  Dkt. No. 45.  After months of discovery, the parties engaged in a full-day mediation with mediator
3  Bruce A. Friedman on January 31, 2020.  Dkt. No. 69-2 at ¶ 18.  While the mediation did not
4  initially end in settlement, the parties reached an agreement in principle on June 5, 2020, after
5  conducting more discovery and engaging in further settlement negotiations with Mr. Friedman.
6  *Id.* at ¶ 7; *see also* Dkt. No. 67.  Plaintiff moved for preliminary approval on June 17, 2020, Dkt.
7  No. 69, which the Court granted on August 24, 2020.  Dkt. No. 73.  The Court directed the parties
8  to implement their proposed class notice plan, including additional information about the
9  deadlines for filing and objecting to Plaintiffs' attorneys' fees motion and request for Plaintiff's
10 incentive award.  *Id.* at 14.

### C. Settlement Agreement

The parties entered into a settlement agreement, fully executed on June 17, 2020.  Dkt. No. 69-1, Ex. 1 ("SA").  The parties filed an amendment to the settlement agreement on August 6, 2020.  Dkt. No. 72-1 ("Amendment").  The key terms are as follows:

<u>Settlement Class Definition</u>:  The Settlement Class is defined as:

> [A]ll regular users or subscribers of numbers assigned to a paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or any service for which the called party is charged for the call to which a text message was transmitted by Trumpia on behalf of Defendant within four years of February 26, 2019.

SA ¶ 1.1.36.

<u>Settlement Benefits</u>:  Defendant will make a $1,950,000 non-reversionary Settlement Fund.  *Id*. ¶¶ 1.1.40, 4.1.  The Settlement Fund will include payments to the Class Members, administrative expenses (estimated between $72,496 and $103,996), Plaintiff's attorneys' fees (not to exceed $650,000) and costs (not to exceed $25,000), and any incentive payment for Lead Plaintiff (not to exceed $5,000).

In addition to the Settlement Fund, Defendant agreed that it will "implement policies and procedures to prevent against the sending of text messages without prior express consent to numbers assigned to wireless carriers using an automated telephone dialing system, and . . . will

3

not send any telemarketing text messages to promote its products and/or services in violation of the TCPA." *Id.* at ¶ 4.3. Specifically, the parties agreed that "Defendant will not make any telemarketing calls or send any telemarketing text messages for a period of 2 years to any Settlement Class Member without an independent investigation into the existence of consent," "Defendant will obtain a subscription to the National Do Not Call Registry," Defendant will perform a quarterly spot check of 10 telemarketing calls and/or texts made on its behalf," and Defendant will require any vendors making telemarketing calls to identify any sub-vendors they use and get prior written approval to use them." Amendment at 2–3 (adding detail to SA ¶ 4.3).

Release: All Settlement Class Members will release:

> [A]ny and all claims, liabilities, demands, causes of action, or lawsuits of the Settlement Class Members, whether known or unknown, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law (such as any violations of the Telephone Consumer Protection Act, 47 USC § 227, the FCC's related regulations—including Do Not Call requirements, or unfair or deceptive practices act), and whether brought in an individual, representative, or any other capacity, (a) that were brought in the Litigation or could have been brought under state or local laws similar to the Telephone Consumer Protection Act, (b) that arise from the manner in which text messages were sent, or attempted to be sent, by or on behalf of Defendant, (c) that arise from a lack of consent for sending text messages or (d) that arise from the sending, or attempted sending, of text messages by or on behalf of Defendant to telephone numbers registered on any federal or state do not call list, within the four years preceding February 26, 2019.

*See id.* at 1–2 (amending SA ¶ 1.1.29).

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion or to object to the Settlement was 60 days after the initial mailing and electronic posting date of the notice. SA at ¶¶ 1.1.25, 10.4. In order to opt out, the Class Member must send a written request with a clear indication that he or she would like to be excluded as well as the "Class Member's name, address, and the telephone number that allegedly received a text or text messages sent by Trumpia on behalf of Defendant during the Settlement Class period." *Id.* at ¶ 10.4. Defendant has the right to terminate the Settlement Agreement if the total number of opt-outs exceeds 1,000. *Id.* at ¶ 10.4.4.

Claims Process and Distribution: Each Class Member is entitled to submit one claim

4

through the proposed claim form. *Id*. at Ex. A.  Each valid claim form submitted before the claims deadline will receive a *pro rata* share of the Settlement Fund within 60 days of the date any judgment becomes "Final."  "'Final' means one business day following the latest of the following events: (i) the expiration of three (3) business days after the time to file a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to file an Appeal of any judgment entered pursuant to this Agreement has passed without any Appeal having been taken; or (iii) the resolution of any such Appeal in a manner that does not reverse or vacate the Judgment and in a manner that permits the consummation of the Settlement substantially in accordance with the terms and conditions of this Agreement." *Id.* at ¶ 1.1.14.

Incentive Award:  The named Plaintiff applied for an incentive award of $5,000.  Dkt. No. 77; *see also* SA at ¶ 5.

Attorneys' Fees and Costs:  Class counsel filed an application for attorneys' fees in the amount of $650,000, as well as $15,169.76 in costs.  Dkt. No. 77; *see also* SA at ¶ 6.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement on August 24, 2020, this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval.  *See* Dkt. No. 73.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th

Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether the proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

1       The Court finds that the notice plan previously approved by the Court was implemented
2   and that the notice thus satisfied Rule 23(c)(2)(B). At preliminary approval, the Court approved
3   the proposed notice plan, which included direct mail notice and publication notice. The third-
4   party settlement administrator, Epiq, mailed Summary Notices via first-class U.S. mail to 16,820
5   identifiable potential Settlement Class Members with a mailing address. Declaration of Cameron
6   R. Azari of Epiq Class Action & Claims Solutions, dated December 1, 2020 (Dkt. No. 79-4,
7   "Azari Decl.") at ¶ 16, 20. Epiq delivered mailed Summary Notices to 86% of Settlement Class
8   Members. *Id.* at ¶ 20. Epiq also published banner notices on Google Display Network websites
9   and on Facebook, which generated approximately 112.7 million impressions nationwide and
10  extended the notice plan's total reach to approximately 90.7% of the Settlement Class. *Id.* at ¶ 21–
11  24.
12      Additionally, Epiq created a dedicated Settlement Website, which included postings of the
13  Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, among
14  other documents. *Id.* at ¶ 25. A link to the Settlement Website was included in all forms of Class
15  Notice provided to Settlement Class members. *Id.* As of November 30, 2020, there were 34,247
16  unique visitors to the Website and 131,023 page views. *Id.* at ¶ 26. Epiq also launched a toll-free
17  telephone number, included on all forms of Class Notice and the Website, to accommodate
18  inquiries regarding the settlement, and Epiq received 109 calls as of November 30, 2020. *Id.* at ¶
19  27–28. Epiq indicates that 2,793 Settlement Class Members have submitted claims, no potential
20  Settlement Class members have opted out, and no Settlement Class Members have filed objections
21  regarding the settlement.[1]  *Id.* at ¶ 29–30. In light of these facts, the Court finds that the parties
22  have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

24      Having found the notice procedures adequate under Rule 23(e), the Court next considers
25  whether the entire settlement comports with Rule 23(e).

---

[1] Additionally, Epiq sent the CAFA Notice to the United States Attorney General and all State Attorneys General. Azari Decl. at ¶ 14. The Court finds that the appropriate government officials were properly and timely notified of the settlement agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

7

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case. Defendant vigorously defended itself from the outset of the case, including bringing a motion to stay pending FCC guidance on what constitutes an autodialer, and a second motion to stay pending a ruling by the Supreme Court regarding the constitutionality of the TCPA. Though the Court denied both motions, *see* Dkt. No. 37, 64, Plaintiff acknowledges that his claims could be nullified by a change in the law concerning these issues. Dkt. No. 79 at 8; *see also* Dkt. No. 79-2 ("Kaufman Decl.") at ¶ 8. In addition to challenges in proving liability, it is not certain Plaintiff would overcome Defendant's opposition to class certification. Kaufman Decl. at ¶ 8. In reaching a settlement, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Defendant would argue class certification is not appropriate because consent and other defenses could not be determined on a class basis. Kaufman Decl. at ¶

8

8. And notably, prior to reaching the settlement, Plaintiff had not yet filed a motion for class certification. Given the "risk that the class would not be certified . . . this factor weighs in favor of approving the settlement. *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156, at *18 (C.D. Cal. Dec. 22, 2014).

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $1,950,000 settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 79 at 10; *see, e.g.*, *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). After deductions for attorneys' fees and costs, settlement administration costs, and a requested enhancement award for Plaintiff, the parties estimate that class members will receive approximately $400. Dkt. No. 79 at 10; Kaufman Decl. at ¶ 2, 9. The TCPA provides for $500 in statutory damages for each violation, with willful violations trebled up to $1,500 for each violation. 47 U.S.C. § 227(b)(3)(B). This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after extensive discovery, where each party served, responded to, and produced documents responsive to two sets of written discovery. Kaufman Decl. at ¶ 4. Plaintiff also engaged in third-party discovery and informal discovery concerning Defendant, including Defendant's financial condition. *Id.* at ¶ 16. And Plaintiff obtained testimony from a telecommunications systems expert, served his expert witness disclosures, and prepared for various depositions, which were scheduled to occur within days of reaching an agreement in principle to settle. *Id.* at 4–5, 16. The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Class Counsel has substantial experience in TCPA class actions and supports this settlement. *See* Kaufman Decl. ¶ 17–23. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served in accordance with the method approved by the Court, advised the Class of the requirements to object or opt out of the settlement. The deadline to submit a claim or object to the settlement was November 17, 2020. Azari Decl. ¶ 29–30. Epiq, the settlement administrator, indicates it received no requests for exclusion and no objections from a Settlement Class Member. *Id.* at ¶ 29. A single objection was filed by Steven Helfand, *see* Dkt. No. 78; who apparently is not a class member.[2] *See* Dkt. No. 79 at 13. Mr. Helfand did not

---

[2] Epiq details that Objector Helfand's telephone number was not included in the Settlement Class Member original data provided to Epiq and that there is no record matching the individual's name or address. Azari Decl. ¶ 29. Objector Helfand later submitted an "objection to evidence" arguing that Epiq "never explain[ed] how or why" it knew he was not a class member. Dkt. No. 80 at 2. Plaintiff addressed this objection by explaining that Class Counsel found that Objector Helfand is not a settlement class member by comparing the text message records obtained through a subpoena enforcement action with the telephone number identified in Objector Helfand's objection. Dkt. No. 81. At the final fairness hearing, Class Counsel also indicated that he searched for additional telephone numbers associated with Objector Helfand and found that none

1    appear at the final fairness hearing.  In an abundance of caution, the Court considers the merits of
2    his objection, but ultimately finds it provides no reasonable basis on which to challenge the
3    settlement's fairness or reasonableness.
4         In his objection, Mr. Helfand argues that notice was inadequate, the release is overbroad,
5    the attorneys' fees are too high, Class Counsel has a conflict of interest, and that incentive awards
6    are unlawful.  Dkt. No. 78.  With respect to notice, Objector Helfand argued that "notice is
7    ineffectual . . . to get claims" and that he could not timely mail his objection in light of Covid.
8    Dkt. No. 78 at 1.  The Court is satisfied that the class notice, which was served in accordance with
9    the method approved by the Court, informed members of their rights and was adequate; notice
10   reached at least 90% of the Settlement Class and resulted in at least 2,793 claims.  Azari Decl. ¶
11   23, 30.  At the final fairness hearing, Class Counsel indicated that the notice efforts resulted in a
12   claims rate of fifteen percent.  And contrary to his assertion, his objection was timely filed.  *See*
13   Dkt. No. 17 at 13 n.4.  Objector Helfand summarily argues, without further reasoning, that the
14   release is "over-broad."  The Court finds, consistent with the discussion of this exact issue at the
15   preliminary approval hearing, that the release is narrowly tailored to the claims arising from the
16   text messages at issue that could have been asserted in the litigation.  *See* Kaufman Decl. ¶ 11.
17        While Objector Helfand argues that Class Counsel has a conflict of interest with the class,
18   he points to no specific facts to suggest a conflict in representation.  Objector Helfand also argues
19   that incentive awards are unlawful under "binding circuit precedent," but cites an Eleventh Circuit
20   case that is not binding and is contrary to Ninth Circuit precedent.  *Compare Johnson v. NPAS*
21   *Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) *with Rodriguez v. W. Publ'g Corp.*, 563 F.3d
22   948, 958 (9th Cir. 2009) (finding that "[i]ncentive awards are fairly typical in class action cases,"
23   and "are discretionary" (emphasis omitted)).  And contrary to Objector Helfand's assertion, no
24   evidence suggests that Class Counsel entered into any incentive agreement with Plaintiff.  *See*
25   Kaufman Decl. ¶ 29 ("Plaintiff was not promised money and Class Counsel was not required to
26   request a service award that increased on a sliding scale as the class's monetary recovery

27
28   of those numbers matched any telephone number on the class list.

increased."). Moreover, as the Court previously noted in granting preliminary approval, the Court ultimately will determine whether Plaintiff is entitled to an incentive award and the reasonableness of the amount requested. *See* Dkt. No. 73 at 12. Similarly, concerning the argument that the attorneys' fees are too high, the Court is "cognizant of it its obligation to review class fee awards with particular rigor." *See* Dkt. No. 73 at 11. Accordingly, the Court denies Mr. Helfand's objections.

The Court finds that the lack of opt-outs and the absence of any well-founded objections indicates overwhelming support among the Class Members and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842 at *10 (N.D. Cal. Nov. 12, 2019) (zero objections and 31 opt-outs in a class of approximately 511,000 people "confirms that the settlement is fair and reasonable.").

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Settlement Class members received adequate notice. Additionally, having reviewed the case in detail, the Court similarly finds no signs of collusion or conflicts in interest that raise concerns about the settlement. Accordingly, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.

**B.  Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment**

In its motion, Class Counsel asks the Court to approve an award of $650,000 in attorneys' fees and $15,169.76 in costs. Dkt. No. 77 at 1. Class Counsel also seeks a $5,000 incentive award for Plaintiff. *Id.*

  **i.  Attorneys' Fees**
    **a.  Legal Standard**

12

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (internal quotation marks omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

**b. Discussion**

Class counsel here seeks $650,000 in fees, or one third of the settlement amount. *See* Dkt.

1   No. 77 at 8.  This request well exceeds the benchmark for a reasonable fee award under the

2   percentage-of-recovery method and is higher than the "usual range" of 20–30%.  *See Vizcaino*,

3   290 F.3d at 1047.  The Court considers the reasonableness of the percentage requested in light of

4   the factors endorsed by the Ninth Circuit, with the 25% award as a starting point.  The Ninth

5   Circuit has identified several factors a court should consider to determine whether to adjust a fee

6   award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required

7   and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the

8   plaintiff; and (5) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048–50.

9         The Court recognizes that Class Counsel obtained significant results for the class, where

10  each claimant will likely receive a pro rata distribution of nearly $400.  *See* Kaufman Decl. ¶ 9.

11  As previously noted, the TCPA provides for statutory damages of $500 for each negligent

12  violation.  And Class Counsel indicates that a payout of $400 is "at the upper end of TCPA

13  settlements."  Dkt. No. 77 at 10; *see e.g.*, *Estrada v. iYogi, Inc.*, No. CV21301989WBSCKD, 2016

14  WL 310279, at *4 (E.D. Cal. Jan. 26, 2016) (approving TCPA settlement where claimants

15  estimated to receive $40); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5

16  (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement where, based on low claims rate, claimants

17  would receive approximately $151).

18        Moreover, no Class Member requested exclusion or objected to the settlement, suggesting

19  strong support for the settlement's outcome.  Further, Class Counsel litigated this action on a

20  contingency fee basis, assuming substantial "risk that they would not be compensated for time and

21  out of pocket expenses invested into this contentious case."  Dkt. No. 77-2 ("Kaufman Fees

22  Decl.") ¶ 35.  Class Counsel also was, to an extent, precluded from taking and devoting resources

23  to other cases or potential cases.  With respect to the quality of litigation, Class Counsel is

24  experienced in the litigation, certification, and settlement of TCPA class action cases.  Kaufman

25  Fees Decl. ¶ 17; Dkt. No. 77-4 ("Coleman Decl.") ¶ 3.  The successful result involved significant

26  commitment of effort and skill, particularly where Defendant was represented by an international

27  defense firm with significant experience in consumer class actions.  *See* Kaufman Fees Decl. ¶ 17.

28        To further justify this upward departure, Class Counsel contends that its lodestar supports

the reasonableness of its request. Dkt. No. 77 at 15.  In calculating its lodestar, Class Counsel states it expended a combined total of 596.45 hours.  Kaufman Fees Decl. ¶ 23-31; Coleman Decl. ¶ 9-15.  With respect to hourly rates, the three attorneys request rates between $730 per hour and $800 per hour.  *Id.*  The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.  *See, e.g.*, *Etter*, 2018 U.S. Dist. LEXIS 189136, at *12 (N.D. Cal. Nov. 4, 2018) (rates ranging from $600 to $950 in a TCPA case); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel).  According to Class Counsel, based on the number of hours billed and the hourly rates, this yields a lodestar of $451,911.  Dkt. No. 77 at 15.  Counsel suggests that a multiplier of approximately 1.44 times the lodestar is appropriate in this case.  *Id.* at 16.

The Court finds that these factors warrant an upward departure from the 25% benchmark.  However, the percentage requested is higher than other awards granted in comparable cases.  *See, e.g.*, *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sep. 27, 2018) (finding 33% attorneys' fee award unjustified and awarding 30% in TCPA case).  The Court finds that the facts of this case do not warrant the extraordinary award of one-third of the settlement fund to Class Counsel.  That said, some upward departure is justified in recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed.  Accordingly, under the percentage-of-fund-method, the Court **GRANTS** attorneys' fees of 30% of the total settlement amount, or $585,000.

### ii. Attorneys' Costs

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).  Class Counsel seeks reimbursement of $15,169.76 in out-of-pocket costs.  *See* Dkt. No. 77 at 19.  Class Counsel submitted tables summarizing the costs and expenses incurred.  Kaufman Fees Decl. ¶ 33; Coleman Decl. ¶ 17.  These expenses include filing fees, *pro hac vice* fees, service of process fees, subpoena costs, postage and courtesy copy costs, expert fees, travel, hotel,

1    airfare costs, and mediation fees.  Dkt. No. 77 at 19.  The Court is satisfied that these costs were

2    reasonably incurred and **GRANTS** the motion for costs in the amount of $15,169.76.

### iii. Incentive Award

Class Counsel requests an incentive award of $5,000 for Plaintiff.  "[N]amed plaintiffs . . . are eligible for reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ."  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members."  *Id.*  The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ."  *Id.* at 977.

Here, the Court finds that Plaintiff added moderate value to the class.  He participated in conversations with Class Counsel to discuss the relevant facts of his claims and the progress of the litigation, and invested time to "search for relevant evidence, review and approve the complaint for filing, respond to discovery, prepare for his deposition, . . . prepare for mediation, evaluate the settlement proposals during and following mediation, and read through and discuss drafts of the Settlement Agreement and amendment thereto with Class Counsel before executing them."  Dkt. No. 77 at 6.  The Court acknowledges that Plaintiff's participation led to a $1,950,000 recovery and resulted in injunctive relief to curb any future TCPA violations aimed at class members and the public at large.

Though Plaintiff made an important contribution to this case, the Court finds that a $5,000 award is substantially disproportionate to Class members' anticipated $400 recovery.  The Court

finds an award of $2,500 to be adequate and appropriate. The Court finds this amount is reasonable and within the range of incentive awards in TCPA actions in this district. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *34 (N.D. Cal. Apr. 15, 2015) (awarding $2,000 incentive awards to named plaintiffs in TCPA action, where based on low claims rate, claimants would receive approximately $151); *Abante Rooter & Plumbing v. Pivotal Payments*, No. 3:16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054, at *21 (N.D. Cal. Oct. 15, 2018) (awarding $2,000 incentive award in TCPA action, where claimants expected to receive "an average payment of $161.32"); *Cabiness v. Educ. Fin. Sols.*, LLC, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *13, 21 (N.D. Cal. Mar. 26, 2019) (awarding $5,000 incentive award in TCPA action, where "because class members will not have to opt in, the majority of the class will receive compensation" of $33.36); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *15, 22 (N.D. Cal. Sep. 27, 2018) (finding $5,000 incentive award in TCPA case was "proportional to the class members' recoveries, which will range between approximately $800 and $4,800"). The Court accordingly **GRANTS IN PART** the request for an incentive award.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS IN PART** the motion for attorneys' fees and incentive award. The Court approves the settlement amount of $1,950,000; settlement administrator costs in the amount not to exceed $105,000; attorneys' fees in the amount of $585,000 and costs in the amount of $15,169.76. The Court further awards named Plaintiff an incentive award of $2,500.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

//

//

//

//

**IT IS SO ORDERED.**

Dated: 12/21/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge